**AN URGENT PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **STEVEN TENDO**, | § | |
| | § | |
| *Petitioner - Plaintiff*, | § | |
| | § | |
| | § | |
| *v.* | § | **CIVIL ACTION:** |
| | § | **1:20 - cv - 0060** |
| **CARLOS RODRIGUEZ**, Deportation Officer, | § | |
| Port Isabel Service Processing Center, | § | |
| **JOSE GARCIA LONGORIA, JR.** Officer in | § | |
| Charge, Port Isabel Service Processing Center; | § | |
| **DANIEL BIBLE**, Field Office Director, San | § | |
| Antonio Field Office, U.S. Immigration and | § | |
| Customs Enforcement; **MATTHEW ALBENCE**, | § | |
| Acting Director, U.S. Immigration and | § | |
| Enforcement; **CHAD WOLF**, Acting Secretary, | § | |
| U.S. Department of Homeland Security; and | § | |
| **UNITED STATES IMMIGRATION AND** | § | |
| **CUSTOMS ENFORCEMENT**, | § | |
| | § | |
| *Respondents - Defendants*. | § | |
| | § | |

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT**

Petitioner-Plaintiff Steven Tendo [Mr. Tendo], by and through undersigned counsel, files this

petition for a writ of habeas corpus and a complaint. Mr. Tendo seeks declaratory and injunctive

relief to remedy his detention in unlawful conditions.

When Mr. Tendo first was detained by Respondents at Port Isabel Service Process Center

[PISPC], Los Fresnos, Texas, on December 20, 2018, he was diabetic. Even through very difficult

times, he was controlling his diabetes. He was watching his diet, taking properly prescribed

medication and monitoring his blood sugar levels carefully with a finger-prick testing device.  He was in robust good health.  Sixteen months later, Mr. Tendo is still detained at PISPC.  His diabetes is out of control.  His diet is not suitable for a diabetic and he has been denied a diet that is suitable.  The treatment he is receiving is inappropriate and inadequate.  He has gone blind in one eye.  He is highly vulnerable to complications of uncontrolled diabetes that are life-threatening.  He is also exceptionally vulnerable to COVID-19 and likely to suffer serious and life-threatening complications were he to be infected.

By continuing to detain Mr. Tendo and denying him the proper care necessary for control of his diabetes, and subsequently failing to provide proper treatment for debilitating and life-threatening complications that have emerged because of the failures in care, Respondents have violated his substantive due process rights under the Fifth Amendment of the United States Constitution, and under the Rehabilitation Act of 1973, 29 U.S.C. § 794.  They are detaining him in conditions that expose him to an unacceptably high risk of succumbing to irreversible and potentially life-threatening complications from uncontrolled diabetes.  They are also detaining him in conditions that expose him to an unacceptably high risk of contracting COVID-19, and of succumbing to it given his uncontrolled diabetes and concomitantly, his compromised immune system.  Respondents have twice cursorily denied Mr. Tendo's request for release to the care of a responsible sponsor on an Order of Supervision or with a bond, either with or without electronic monitoring.

Mr. Tendo seeks a declaration and injunction to remedy his unlawful civil detention and to rectify all conditions that preclude Mr. Tendo from implementing necessary actions to stabilize his diabetes and maintain his blood sugar levels and to address the serious harms that have resulted from Respondents' failure in their duty of care, including if necessary, an order requiring his immediate

release from detention.  Mr. Tendo further seeks a declaration and injunction to remedy his unlawful civil detention and to remove all conditions that prevent him from implementing the only known means of preventing his infection by COVID-19 including, if necessary, an order requiring his immediate release from detention.

## CUSTODY

1.      Petitioner-Plaintiff Mr. Tendo is detained at the Port Isabel Service Processing Center, in the physical and legal custody, and under the direct control of the following Respondents-Defendants (and their agents): Carlos Rodriguez, Deportation Officer, Port Isabel Service Processing Center; Jose Garcia Longoria, Jr., Officer-in-Charge, Port Isabel Service Processing Center; Daniel Bible, Field Office Director, San Antonio Field Office, U.S. Immigration and Customs Enforcement [ICE]; Matthew T. Albence, Acting Director of ICE; and Chad Wolf, Acting Secretary, U.S. Department of Homeland Security [DHS].

## JURISDICTION

2.      This case arises under the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the federal habeas corpus statute (28 U.S.C. § 2241), and the Rehabilitation Act of 1739, 29 U.S.C. § 794(a).

3.      This Court has jurisdiction over this habeas petition and complaint pursuant to 28 U.S.C. § 2241 (habeas corpus); Article I, Section 9, clause 2 of the United States Constitution (Suspension Clause); 28 U.S.C. § 1331 (federal question).

4.      Under 28 U.S.C. § 2241, district courts have jurisdiction to hear habeas petitions by non-citizens who challenge the lawfulness of their detention under federal law.  *Denmore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 522 U.S. 678, 687 (2001); *Maldonado v. Macias*, 150

F.Supp. 3d 788, 794 (W.D. Tex. 2015).

5.      This Court may grant relief pursuant to 28 U.S.C. § 2241 and the All Writs Act, 28 U.S.C. § 1651.

6.      The United States waives sovereign immunity for this action for declaratory and injunctive relief against one of its agencies; the agencies officers are sued in their official capacity only.  5 U.S.C. § 702; 29 .S.C. § 794.

## VENUE

7.      Venue in the Southern District of Texas is appropriate since it is the district in which Respondents-Defendants reside and where the Petitioner-Plaintiff is detained.  28 U.S.C. § 1391(e).

## PARTIES

### *Petitioner-Plaintiff*

8.      Petitioner-Plaintiff STEVEN TENDO is detained by ICE at PISPC.   Hh initially came to the port of entry in Brownsville, Texas and asked for asylum.  He was detained at PISPC in Los Fresnos, Texas, received a positive finding of fear following an interview by an asylum officer, and was placed in removal proceedings.  His case is currently pending resolution, with a petition for review in-process at the United States Court of Appeals for the Fifth Circuit (20-60038), and a solid motion to reopen pending at the Board of Immigration Appeals [BIA].  Motions for stays of removal are pending at both the Fifth Circuit and the Board of Immigration Appeals [BIA].  *Exhibit A, Doc. 9, Letter from Lisa Brodyaga, Esq.*

### *Respondents - Defendants*

9.      Respondent-Defendant CARLOS RODRIGUEZ, is sued in his official capacity as Deportation Officer at PISPC, with line responsibility for the case of Steven Tendo.

10.     Respondent-Defendant JOSE GARCIA LONGORIA, JR. is sued in his official capacity as the Acting Officer-in-Charge of PISPC.  He is an employee of the Department of Homeland Security [DHS].  As the Acting Officer-in-Charge, he is the immediate physical custodian of Mr. Tendo.

11.     Respondent-Defendant DANIEL BIBLE is sued in his official capacity as the Field Office Director for the San Antonio Office of ICE.  He oversees all ICE/ERO functions and detainees in the San Antonio area, including detainees at PISPC.  He has legal custody over Mr. Tendo and is authorized to release him.

12.     Respondent-Defendant MATTHEW T. ALBENCE is sued in his official capacity as the Acting Director of ICE.  In that capacity, he exercises authority over all ICE policies, procedures, and practices relating to ICE enforcement operations and detention facilities.  He is responsible for ensuring that all people held in ICE custody are detained in accordance with the law.

13.     Respondent-Defendant CHAD WOLF is sued in his official capacity as the Acting Secretary of DHS.  He is responsible for enforcing federal laws concerning border control and immigration. Acting Secretary Wolf has direct authority over ICE, which is responsible for the civil detention of immigrants in the United States.

14.     Defendant U.S. Immigration and Customs Enforcement is a component agency of DHS.  ICE detains petitioner at PISPC  as part of a program or activity of an Executive agency and pursuant to federal immigration law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Mr. Tendo has exhausted his administrative remedies to the extent required by law and his only remedy is by way of this judicial action.

## STATEMENT OF FACTS

### *COVID-19 in the Detention Setting*

16.     **COVID-19 is a serious disease.**  It is caused by a coronavirus designated as SARS-CoV-2. It is highly contagious in humans, spread primarily through respiratory droplets (by coughing or sneezing).   There is no herd immunity.  Everyone is at risk because our immune systems have not been exposed to it and thus have not developed protective responses against this virus.  It is the cause of the ongoing pandemic of coronavirus disease 2019– COVID-19.  *Exhibit A, Doc. 1, Declaration of Dr. Marsha R. Griffin at p. 3 ¶¶ 1, 3; Doc. 2, Declaration of Dr. Jaime Meyers ¶ 20.*

17.   The disease can result in severe and widespread damage to lungs, heart, liver, or other organs. In too many cases, COVID-19 results in death.  *Exhibit A, Doc. 2 ¶ 21; see also, Doc. 1 at p. 3 ¶ 2.*

18.     The overall case fatality rate has been estimated to be from five to thirty-five times the fatality rate associated with influenza infection.  *Exhibit A, Doc. 1 at p. 3 ¶ 2.*  Overall, some twenty percent of cases will have severe disease requiring medical intervention and support.  *Id.*

19.     Those who develop serious complications will need advanced medical support.  *Exhibit A, Doc. 2 ¶ 22.*  This level of support is especially difficult to provide for detained individuals.  *Id. ¶¶ 16, 32-33.*

20.     There is no vaccine against COVID-19, nor is there any known medication or treatment that effectively prevents or cures COVID-19.   *Exhibit A, Doc. 2 ¶ 19.*  The only effective measure to reduce the risk of infection and thus severe illness or death to vulnerable individuals is to prevent the spread of the virus through enforced social distancing and scrupulous hygiene, including rigorous and frequent washing of hands with soap and water.  *Exhibit A, Doc. 2 ¶¶ 9-12, 23.*

21.   **Individuals with underlying health concerns are considered to be at high risk of serious**

**illness and death if they are infected with COVID-19**.  Underlying health concerns that place a person at high risk if infected with COVID-19 include (but are not limited to) the following: people over the age of 50; anyone diagnosed with cancer, autoimmune disease, chronic lung disease, a history of cardiovascular disease, chronic liver or kidney disease, diabetes, hypertension, etc.  *Exhibit A, Doc. 1 at pp 3-4  ¶ 5; Doc. 2 ¶ 21; Doc. 3, Declaration of Dr. Carlos Franco-Paredes, at 1-2.*

22.      Individuals in high risk categories, including those with pre-existing conditions, will likely require more advanced support if they contract COVID-19.  *Exhibit A, Doc. 1 at p. 4 ¶ 7.*

23.      COVID-19 poses a serious risk to people in closed settings, such as detention facilities. Detention facilities and other closed settings have long been associated with high transmission possibilities for infectious disease, including tuberculosis, MRSA (methicillin resistant stah aureus) and viral hepatitis.  Infections transmitted by droplets like COVID-19 are particularly difficult to control in detention facilities, since maintaining six foot distancing and the proper decontamination of services are virtually impossible.  *Exhibit A, Doc. 1 at p. 4 ¶¶ 1, 2; Doc. 2 ¶¶ 7-10.*

24.      Experts in the field of detention health, infectious disease, and public health have expressed grave concerns about the imminent risk to the health and safety of immigrant detainees and to the public at large as a direct result of detaining large populations in congregate settings.[1]  One of the most critical risks in such settings is the rapid spread of infectious diseases. COVID-19 could be rapidly disseminated throughout the entire systems– by both the detained and employees, including contract employees, at the detention facility– with devastating consequences to public health.  This is already happening within the immigration detention system, although its extent is impossible to

---

[1] https://assets.documentcloud.org/documents/6816336/032020-Letter-From-Drs-Allen-Rich-to-Congress-Re.pdf

determine because of a lack of transparency and tracking by the Department of Homeland Security,

Immigration and Customs Enforcement.[2]

25.     A growing number of courts are granting compassionate release to prisoners during this

pandemic. *Exhibit A, Doc. 1 at p. 6 ¶ 5.*  The federal government's stance has been uncertain and

vacillating for those detained by the Board of Prisons.[3]  Calls for DHS/ICE to "immediately release

all immigrants under its custody—including those at private facilities and county jails—who are

considered vulnerable and who are not likely to pose a specific and substantial risk of causing bodily

injury or using violent force against the person of another" have had little effect.[4]

**The Case of Steven Tendo**

26.     Mr. Tendo is thirty-five years old and a national of Uganda.   On December 20, 2018, he

came to the port of entry in Brownsville, Texas and asked for asylum.  He was detained at PISPC

in Los Fresnos, Texas, received a positive finding of fear following an interview by an asylum

officer, and was placed in removal proceedings pursuant to 8 U.S.C. § 1229a.

27.     When Mr. Tendo was processed into PISPC in December 2018, he suffered from diabetes,

---

[2]*See,* Valerie Gonzalez, "Valley immigration contractor tests positive for coronavirus," *KRGV* (April 9, 2020) at https://www.krgv.com/news/valley-immigration-detention-contractor-tests-positive-for-coronavirus; Stephen Paulson, "At Least Seven Texas Detention Cener Employees Who Tested Positive for COVID-19 Were Not Officially Reported By ICE," *Texas Observer* (April 16, 2020) at https://www.newsbreak.com/texas/houston/news/0OlwBZ26/at-least-seven-texas-detention-center-employees-who-tested-positive-for-covid-19-were-not-officially-reported-by-ice; AP, "Immigration Prisoner With Covid-19 Too Weak to Talk to Judge," *Courthouse News* (April 17, 2020) at https://www.courthousenews.com/immigration-prisoner-with-covid-19-too-weak-to-talk-to-judge/

[3]*See* Josh Gerstein, "Trump administration reverses prisoner coronavirus release policy, advocates say," *Politico* (April 21, 2020) at https://www.politico.com/news/2020/04/21/trump-administration-reverses-prisoner-release-policy-198648.

[4]*See* https://www.booker.senate.gov/news/press/booker-calls-on-immigration-agencies-to-release-vulnerable-detainees-adjust-enforcement-priorities-amidst-covid-19-outbreak

without complications. His diabetes on entry was controlled and he was in robust good health. He had been responsible with his diet. He brought with him medication which he used as prescribed and a finger-prick testing device that allowed him to monitor his blood sugar levels daily. At PISPC, his finger-prick testing device was taken from him on entry. Monitoring of blood sugar levels was scheduled for every three months. Mr. Tendo's medication was changed. He was denied a diet suitable for diabetics.

28.     Sixteen months later, Mr. Tendo remains detained at PISPC. His initial request for parole, following a positive finding of credible fear by an asylum officer was denied, with no specific reasons given. His diabetes is out of control and his blood sugar levels fluctuate dangerously. *See Exhibit A, Doc. 1 at pp. 6-7 ¶ 2.* Despite repeated requests as his condition deteriorated, he has been denied a diet suitable for a diabetic, or even a kosher diet that would at least be an improvement. *Id.* Mr. Tendo suffers from numbness and tingling in his extremities. He has gone blind in one eye. He manifests boils all over his body, lesions often caused by infection with MRSA (methicillin resistant Staph Aureus) which spreads rapidly in prison or detention settings.  *Id. at p. 4 ¶ 1.* Diabetic patients are at high risk of serious life-threatening infections from MRSA. *Id.*

29.     Diabetic patients like Mr. Tendo are also at high risk of contracting COVID-19, and of suffering serious complications leading to death when they are infected by the virus. In early March 2020, COVID cases began to be reported in Texas, with the number of cases growing exponentially as March gave way to April. On April 9, 2020, it was finally reported in the news that a case of COVID-19, a contract employee, had been confirmed at PISPC (the diagnosis had occurred ten days earlier). ICE downplayed the significance and it was noted that "although contractors are required to report their positive COVID-19 cases to the agency, those numbers are not included" on their

website (or in any public reports that can be identified and accessed without FOIA action).[5]

30.     There is no vaccine, tested reliable treatment nor cure for COVID-19.  Effective preventive measures recommended by the Center for Disease Control [CDC] include self-isolation, sustained social distancing, scrupulous hygiene, and testing.  While detained at PISPC, this is not practicable for Mr. Tendo nor for any other detainee at PISPC.  Recent reports reveal that dormitories or pods house approximately seventy (70) men.  Four toilet bowls stand in the open, unshielded, in the dormitory.  Staff bring cleaning materials in the morning and evening, and the detainees scrub the toilets.  There is no way to sanitize the toilets during the day, nor to move them further from the beds where the detainees eat.  The beds are in close proximity, making social distancing impossible.  Most of the detainees have neither gloves nor masks.  A box of masks put out in one of the pods was quickly depleted and has not been replaced.  They are not issued soap; rather they receive three small packets of shampoo a day.[6]  Soap may be purchased in the commissary, but only by those detainees with funds.  Guards and other personnel do have access to masks and gloves.  Some wear gloves, a few wear masks– most do not.  Reports are that PISPC employees going in and out of the different dormitories rarely wear masks or gloves.  *Exhibit A, Doc. 4, Statement Jennifer K. Harbury.*  New intakes are processed into PISPC regularly and given the critical shortage of tests, it is highly unlikely that they are tested for COVID-19 before integration into the general population.  Efforts to prevent the introduction and the spread of COVID-19 within the detention center are simply impossible in the conditions that prevail at PISPC.  This creates an unacceptable risk for detainees,

---

[5]"Valley immigration detention contractor tests positive for coronavirus" *KRGV* (April 9, 2020). http://www.krgv.com/news/valley-immigration-detention-contractor-tests-positive-for-coronavirus.

[6]Undersigned counsel was at the facility yesterday.  A report from a detainee is that very recently soap dispensers were installed in the pods.  Masks remain generally unavailable.

particularly those most vulnerable to the virus.  It also creates an unacceptable risk for communities in the Rio Grande Valley, given that employees at PISPC come to work from the community, and return into the community after their shifts, thus acting as vehicles for transfer of the virus between community and detention facility on a daily basis.

31.    Despite repeated requests, Mr. Tendo has been denied disability accommodations, specifically he has been repeatedly denied a special diet to facilitate control of his diabetes; his finger-prick testing device to monitor his blood sugar levels was taken from him when he was processed into PIDC .  Despite being informed that Mr. Tendo's condition makes him exceptionally vulnerable to COVID-19, and to life-threatening complications should he be infected, officials have twice denied requests for Mr. Tendo's release to a responsible sponsor in Weslaco where he could safely self-isolate, adopt the recommended social distancing, have free access to soap and other hygiene products, as well as to a diet suitable for the control of his diabetes and medical care as required. On April 7, 2020, a request was made for the release or parole of Mr. Tendo, informing ICE of his condition and requesting his release, with supporting documents, including a medical doctor's evaluation of Mr. Tendo's treatment and condition based on the medical records from PISPC, and sponsor documents. *Exhibit A, Doc. 5, Package and request submitted for release of Mr. Tendo.* A telephone follow-up to the request resulted in it being cursorily denied by Deportation Officer Carlos Rodriguez, immediately after he went to the fax machine and retrieved the package  (we assume the denial was in consultation with Officer-in-Charge Longoria) with no reasons given.  The request was also sent to the ICE San Antonio Field Office.  This was transferred back to PISPC, and on April 15, 2020, this too was denied, in writing, with no reasons given for the denial.  *Exhibit A, Doc. 6, Denial of Request for Release.*

32.    To date, Respondents have not released Mr. Tendo, have not suppled any justifications for their failure to release, and have done nothing to address the very dangerous conditions in which Mr. Tendo lives, nor to address his harmful diet and the deficiencies in his treatment that have resulted in dangerously uncontrolled and inadequately treated diabetes with the accompanying deterioration in his health.

***Failures of the Department of Homeland Security / Immigration and Customs and Enforcement***

33.    Diabetes is a disability under 29 U.S.C. § 205(2)(B); 42 U.S.C. § 12102.  As his too rapidly deteriorating condition manifests, Mr. Tendo is not being provided adequate care by DHS/ICE.  As of April 5, 2020, he was being provided only one medication for diabetes– metformin, which Dr. Madaras, who reviewed all medical records provided to Mr. Tendo at the facility, notes is "an insufficient single medication in his case if, while taking it correctly, his blood glucose is over 500." Dr. Madaras further notes that "the physicians who treated him in the urgent care center with insulin were providing the correct medication, but not with the right dose or frequency."  *See Exhibit A, Doc. 7, Medical Review Dr. Laszlo Madaras at p. 2; see also Doc. 1 at p. 6-7, ¶ 2.*

34.    Mr. Tendo has been repeatedly denied a diabetic diet that would assist him in controlling his blood sugar levels, and he has also been denied a kosher diet that would represent an improvement. *Exhibit A, Doc. 8.*    Despite worsening problems with his eyes, and substantial pain, the appointment finally arranged with an eye specialist resulted in a recommendation for surgery to remove the cataract caused by his uncontrolled diabetes.  This was not scheduled and ultimately, when Mr. Tendo went blind in one eye and he was finally taken again to the specialist, surgery could not be scheduled until the lifting of a ban on "elective surgery" owing to the COVID-19 crisis. *Id.*

35.    The consequences to Mr. Tendo of this inadequate care, which attains the level of egregious

are serious.  As noted above, he has already gone blind in one eye.  Dr. Madaras notes that as a result of this inadequate care, Mr. Tendo's risks "over time are very high for diabetic retinopathy (development of vision problems), diabetic neuropathy (loss of nerve function and feeling in his feet and hands), and diabetic nephropathy (kidney failure leading to dialysis)."  All could lead to further morbidity possibly making it difficult for him to function or to earn a living.  *Exhibit A, Doc. 7 at p. 2.*

36.     Dr. Griffin, reviewing the record two weeks later with records supplemented by Mr. Tendo's latest examination by the eye specialist, found even graver cause for concern.  Recent tests indicated out of control diabetes placing Mr. Tendo "in grave risk for infection of any kind due to a weakening of the immune system."  Moreover, the diagnosis of the opthalmologist was posterior subcapsular cataract "which is caused by uncontrolled blood glucose levels."  Further as Dr. Griffin states, "the early formation of cataracts (Mr. Tendo is only 35 years old) can also be a sign of an autoimmunity to insulin."  The boils or lesions from which Mr. Tendo suffers "are often caused by infection with MRSA (methicillin resistant Saph Aureus)" which spreads rapidly in a detention setting.  "If MRSA gets into the patient's blood system," Dr. Griffin writes, "it can spread to vital organs, including the heart and brain and can lodge in bones causing chronic osteomyelitis (bone death)."  Individuals who suffer from diabetes are at increased risk of serious life-threatening infections from MRSA.  *Exhibit A, Doc. 1 at p. 7 ¶ 4.*

37.     As Dr. Griffin observes, Mr. Tendo's "uncontrolled Diabetes Mellitis, possible MRSA skin infections and cataracts are indicative of his compromised immune system and places him in a high risk category."  *Id. at ¶ 5.*

38.     If exposed to COVID-19, and it is very likely that will occur in view of the fact that COVID-

19 infected individuals have already been identified at the facility, Mr. Tendo has a significant

likelihood of contracting COVID-19 and suffering serious complications, up to and including death.

He has no ability in a detained setting to take actions that could bring his diabetes back under

control.  He also has no ability to take the only preventive measures that currently have been

identified as necessary to avoid exposure and infection.

## CLAIMS FOR RELIEF

### ONE:

### The Due Process Clause of the Fifth Amendment to the United States Constitution

39.     Mr. Tendo incorporates by reference paragraphs 1 through 38 above.

40.     The Fifth Amendment to the United States Constitution requires that an individual who is

detained by the State be afforded conditions of reasonable health and safety including food, shelter,

and medical care.  *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *see also, City of Revere*, 463 U.S.

239, 244 (1983).

41.     Respondents are subjecting Mr. Tendo to conditions of confinement that substantially

increase his risk of contracting COVID-19.

42.     Respondents act with deliberate indifference to the excessive risk of harm to Mr. Tendo's

health and safety posed by COVID-19.  They are aware of Mr. Tendo's diabetes, an underlying

condition that results in heightened risk of serious illness or death if infected with COVID-19.  They

are aware that conditions at PISPC expose Mr. Tendo to a substantially greater risk of infection.  By

subjecting Mr. Tendo to this risk, they fail to ensure his safety and health in violation of his due

process rights.  Further, Respondents violate Mr. Tendo's due process rights by failing to take action

to ameliorate the conditions that prevent him from adopting the only known means of protecting

himself from infection, or by failing to release him.

43.      The Fifth Amendment to the U.S. Constitution also requires that civil detainees must not be subjected to conditions that amount to punishment. The government violates this substantive due process right when it subjects civil immigration detainees to cruel treatment and conditions of confinement that amount to punishment, and fails to ensure their health and safety.

44.      Separately and cumulatively, regardless of Respondents' intent, the following conditions amount to a violation of the due process rights of Mr. Tendo who is a civil detainee:

    *    denial of adequate soap, hand sanitizer, and other hygiene products, as well as masks and gloves to Mr. Tendo and other detainees that could afford protection for all from infection;

    *    failure to clean and decontaminate frequently used common items and surfaces adequately;

    *    enforcing continuous detention of Mr. Tendo in crowded conditions that preclude social distancing;

    *    failure to monitor all detainees for COVID-19 on a regular basis;

    *    failure to screen incoming detainees, guards, ICE Deportation Officers, contractors and visitors for COVID-19 before they enter the PISPC; and

    *    failure to provide proper and adequate treatment, medication and proper diet to Mr. Tendo to control and manage his diabetes.

45.      Mr. Tendo's conditions of confinement are not reasonably related to a legitimate goal of detention.

46.      Respondents' actions amount to and are intended as punishment and thus violate Mr.

Tendo's due process rights.

47.     Respondents hold Mr. Tendo in custody in violation of the Fifth Amendment to the Constitution of the United States. A writ of habeas corpus is necessary to remedy the constitutional violations, to ensure Mr. Tendo receives necessary and timely medical care, and to remove the unreasonable risk that Mr. Tendo will contract COVID-19 and suffer further serious physical injury and harm.

48.     Alternatively, if the Court denies a writ of habeas corpus, declaratory and injunctive relief are needed to compel Respondents to provide safe conditions to remedy their violations of the Fifth Amendment and to prevent serious, imminent, irreparable physical injury to Mr. Tendo.

## TWO:

### Violation of the Rehabilitation Act - Failure to Provide Reasonable Accommodation to Persons with Disabilities

49.      Mr. Tendo incorporates by reference paragraphs 1 through 48 above.

50.     Section 504 of the Rehabilitation Act ("Section 504") provides that "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity, conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794.

51.     Section 504 of the Rehabilitation Act requires federal agencies to provide "reasonable accommodations" to individuals with disabilities so they can fully participate in benefits administered by these agencies. 29 U.S.C. § 794(a).

52.     DHS regulations implementing the Rehabilitation Act mandate that "[n]o qualified individual

-16-

with a disability in the United States, shall, by reason of his or her disability, be excluded from participation in, be denied benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the Department." 6 C.F.R. § 15.30; see also 29 U.S.C. § 794(a). The regulations implementing Section 504 prohibit entities receiving federal financial assistance from utilizing "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons." 34 C.F.R. § 104.4(b)(4).

53.     Defendant ICE is an Executive agency within the meaning of the Rehabilitation Act.

54.     Mr. Tendo's underlying medical condition qualifies as a disability for purposes of the Rehabilitation Act, 29 U.S.C. § 205(2)(B); 42 U.S.C. § 12102.

55.     The services, programs, and activities within PISPC receive substantial federal financial assistance and are programs and activities conducted by an Executive agency. The removal process, including the fair and proper adjudication of applications for relief from removal to their ultimate conclusion, is a benefit administered by DHS. Mr. Tendo is entitled to participate in that benefit.

56.     By failing to provide adequate medical care, including a medically appropriate diet, Respondents have contributed to a deterioration of Mr. Tendo's condition and have exposed him to an exponentially heightened risk of contracting COVID-19.  By doing so, Defendants' have prevented Mr. Tendo from participating in the removal process to the end by reason of his disability.

57.     By failing to provide Mr. Tendo adequate protection from COVID-19 through the only means found to be effective in reducing the risk of severe illness or death, Defendants have the purpose or effect of defeating or substantially impairing the accomplishment of removal proceedings and the

-17-

services, programs, and activities within PISPC with respect to Mr. Tendo.

58.      Defendants' disparate treatment of Mr. Tendo based on his disability, their use of criteria or methods of administration with respect to the removal process and the services, programs, and activities within the Detention Centers, and their failure to provide Mr. Tendo with reasonable accommodations necessary for Mr. Tendo to control and minimize his disability constitute disability discrimination in violation of Section 504.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Tendo prays that this Court grant the following relief:

A.      Assume jurisdiction over this matter;

B.      Declare Mr. Tendo's detention to be unlawful and unconstitutional;

C.      Order the immediate release of Mr. Tendo from PISPC, or his placement in a community-based alternative to detention such as conditional release, with appropriate precautionary health measures;

D.      In the alternative, if the Court does not grant a writ of habeas corpus, order Defendants to provide Mr. Tendo with protection from the risk of contracting COVID-19 by ameliorating all conditions that are undermining Mr. Tendo's health, prevent him from controlling his disability, and prevent him from implementing the public health recommendations that are the only known means of preventing and mitigating the effects of COVID-19;

E.      Enjoin Respondents-Defendants from transferring Mr. Tendo outside of this judicial district pending litigation of this matter or the conclusion of his removal proceedings;

F.      Award to Mr. Tendo reasonable costs and attorney's fees; and,

G.      Grant any other relief that this Court deems just and proper.

Dated: April 22, 2020                          Respectfully submitted,

                                               _s//Cathy J. Potter_____
                                               Cathy J. Potter, Attorney in Charge
                                               Law Firm of Cathy J Potter PLLC
                                               Law Firm of Cathy J Potter PLLC
                                               409 East Jackson Avenue
                                               Harlingen, Texas 78550
                                               Pennsylvania Bar 210071
                                               Federal I.D.  1060322
                                               (956) 622-3011 Telephone
                                               (956) 622-3017 Fax

                                               For the Petitioner-Plaintiff Steven Tendo

### *Verification*

Undersigned counsel, Cathy J. Potter, submits this verification on behalf of the Petitioner, Steven Tendo.  I have discussed the events described in the Petition for Writ of Habeas Corpus and Complaint with Mr. Tendo.  On the basis of those discussions, I verify that the statements in this Petition and Complaint are true and correct to the best of our knowledge and belief.

_s// Cathy J. Potter_____
Cathy J. Potter