# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEVEN TENDO, | § | |
|     Petitioner/Plaintiff | § | Civil Action No. 1:20-cv-060 |
| v. | § | |
| | § | |
| CARLOS RODRIGUEZ, et al., | § | |
|     Respondents/Defendants | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
## FOR A TEMPORARY RESTRAINING ORDER

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By:    *s/ Christopher D. Pineda*
       Christopher D. Pineda
       Assistant United States Attorney
       *Attorney-in-Charge*
       Southern District No. 1055715
       Texas Bar No. 24070420
       600 E. Harrison, Suite 201
       Brownsville, Texas 78520
       Tel: (956) 548-2554
       Fax: (956) 548-2775
       Email: Christopher.Pineda@usdoj.gov

       Annalisa L. Cravens
       Assistant United States Attorney
       Southern District No. 2791281
       Texas Bar No. 24092298
       1000 Louisiana Street, Suite 2300
       Houston, Texas 77002
       Tel.: (713) 567-9489
       Fax: (713) 718-3303
       Email: Annalisa.Cravens@usdoj.gov

       *Counsel for Defendants*

# TABLE OF CONTENTS

SUMMARY ................................................................................................................1

BACKGROUND ........................................................................................................1

ISSUES PRESENTED................................................................................................6

STANDARD OF REVIEW .........................................................................................6

ARGUMENT ...............................................................................................................7

   I.   Plaintiff has not shown a substantial likelihood of success on the merits .........................7

      a.  Plaintiff's habeas corpus claims................................................................7

          1.  Plaintiff may not challenge the conditions of his confinement through a habeas petition seeking immediate release ............................................................8

          2.  Habeas is also unavailable because Plaintiff's custody is lawful ..........................11

      b.  Plaintiff's Constitutional claims .................................................................13

          1.  Plaintiff's direct Constitutional claims are not cognizable ....................................13

          2.  Defendants' steps taken to prevent COVID-19 spread show that they are neither punishing Plaintiff nor deliberately indifferent to his needs.....................13

      c.  Plaintiff's Rehabilitation Act claims..........................................................18

          1.  Courts across the country do not recognize RA claims by federal detainees, and Plaintiff's claims relating to his removal procedures are barred....................18

          2.  Even if he could bring RA claims, Plaintiff does not allege or show that he has been excluded from activities or programs because of his disabilities............20

      d.  This Court should not take over PIDC's proactive management of COVID-19 prevention measures....................................................................................23

   II.  Plaintiff fails to satisfy the other TRO factors necessary to demonstrate a "clear entitlement" to relief ...........................................................................................25

CONCLUSION..........................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyei-Kodie v. Holder,*
    418 F. App'x. 317 (5th Cir. 2011) .................................................................... 11, 12

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................................................ 19

*Alexander v. Trump,*
    753 F. App'x 201 (5th Cir. 2018) ......................................................................... 13

*Arce v. Louisiana,*
    226 F. Supp. 3d 643 (E.D. La. 2016) ................................................................... 21

*Asturias v. Smith,*
    2016 WL 4435702 (N.D. Ala. 2016) ..................................................................... 14

*Bell v. Wolfish,*
    441 U.S. 520 (1979) ................................................................................................ 24

*Bellikoff v. Eaton Vance Corp.,*
    481 F.3d 110 (2d Cir. 2007) .................................................................................. 19

*Benitez-Garay v. Dep't of Homeland Sec.,*
    2019 WL 542035 (W.D. Tex. 2019) ..................................................................... 10

*Bennett–Nelson v. Louisiana Board of Regents,*
    431 F.3d 448 (5th Cir. 2005) ................................................................................. 20

*Bivens v. Six Unknown Federal Narcotics Agents,*
    403 U.S. 388 (1971) .................................................................................................. 9

*Bluefield Water Ass'n, Inc. v. City of Starkville,*
    577 F.3d 250 (5th Cir. 2009) ................................................................................... 6

*Bryant v. Madigan,*
    84 F.3d 246 (7th Cir.1996) .................................................................................... 21

*Cadena v. El Paso County,*
    946 F.3d 717 (5th Cir. 2020) ................................................................................. 21

*Carson v. Johnson,*
    112 F.3d 818 (5th Cir. 1997) ................................................................................... 8

*Chance v. Napolitano,*
    453 F. App'x. 535 (5th Cir. 2011) ........................................................................ 12

*Clark v. Martinez,*
    543 U.S. 371 (2005) ................................................................................................ 12

*Dawson v. Asher,*
    2020 WL 1304557 (W.D. Wash. Mar. 19, 2020) ................................................ 25

*Dawson v. Asher,*
    2020 WL 1704324 (W.D. Wash. Apr. 8, 2020) ................................................... 18

*De Dandrade v. U.S. Dep't of Homeland Sec.*,
   367 F. Supp. 3d 174 (S.D.N.Y. 2019) ............................................................ 18, 19
*Demore v. Kim*,
   538 U.S. 510 (2003) ........................................................................... 15, 23, 25
*Domino v. Tex. Dep't of Criminal Justice*,
   239 F.3d 752 (5th Cir. 2001) ........................................................................ 14
*Edwards v. Johnson*,
   209 F.3d 772 (5th Cir. 2000) ........................................................................ 13
*EEOC v. Agro Distrib.*,
   555 F.3d 462 (5th Cir. 2009) ........................................................................ 21
*Fraihat v. U.S. Immigration and Customs Enforcement*,
   2020 WL 1932570 .............................................................................. 23, 24
*Garrett v. Thaler*,
   560 F. App'x 375 (5th Cir. 2014) .................................................................... 21
*Gisbert v. U.S. Atty. Gen.*,
   988 F.2d 1437 (5th Cir.) ............................................................................. 14
*Gobert v. Caldwell*,
   463 F.3d 339 (5th Cir. 2006) ........................................................................ 14
*Hare v. City of Corinth*,
   74 F.3d  (5th Cir. 1996) ............................................................................. 14
*Hearth, Inc. v. Dep't of Public Welfare*,
   617 F.2d 381 (5th Cir. 1980) ........................................................................ 13
*Hernandez v. Garrison*,
   916 F.2d 291 (5th Cir. 1990) ......................................................................... 9
*Hurtado v. Reno*,
   34 F. Supp. 2d 1261 (D. Colo. 1999) ................................................................ 19
*Inko-Tariah v. Lappin*,
   2009 WL 8652932 (E.D.N.C. 2009) ................................................................. 19
*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ......................................................................... 6
*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ............................................................................ 23, 25
*Jorge V. S. v. Green*,
   2020 WL 1921936 (D.N.J. Apr. 21, 2020) ........................................................... 18
*Justin Indus., Inc. v. Choctaw Secs., L.P.*,
   920 F.2d 262 (5th Cir. 1990) ......................................................................... 7

**TABLE OF AUTHORITIES**

Cont'd

*Karaha Bodas Co. v. Perusahaan Pertambangan*,
   335 F.3d 357 (5th Cir. 2003) .................................................................. 6

*Khan v. Fort Bend Indep. Sch. Dist.*,
   561 F. Supp. 2d 760 (S.D. Tex. 2008) .................................................. 6

*Kingsley v. Hendrickson*,
   135 S. Ct. 2466 (2015) ........................................................................ 24

*Lawal v. Lynch*,
   156 F. Supp. 3d 846 (S.D. Tex. 2016) ................................................ 12

*Livas v. Myers*,
   2020 WL 1939583 (W.D. La. Apr. 22, 2020) ..................................... 9

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987) ............................................................ 14

*Martinez v. Mathews*,
   544 F.2d 1233 (5th Cir. 1976) .............................................................. 7

*Mathis, v. GEO Group, Inc.*,
   2009 WL 10736631 (E.D.N.C. 2009) ................................................ 19

*Medlin v. Palmer*,
   874 F.2d 1085 (5th Cir. 1989) .............................................................. 6

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) ................................................................ 7

*Northup v. Thaler*,
   2012 WL 4068676 (S.D. Tex. Aug. 7, 2012) ................................ 9, 10

*Nottingham v. Richardson*,
   499 F. App'x 368 (5th Cir. 2012) ...................................................... 21

*Okpoju v. Ridge*,
   115 F. App'x. 302 (5th Cir. 2004) ...................................................... 12

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999) ............................................................................ 21

*P.L. v. U.S. Immigration & Customs*,
   *Enf't*, 2019 WL 2568648 (S.D.N.Y. 2019) ....................................... 20

*Palacios v. Dep't of Homeland Sec.*,
   407 F. Supp. 3d 691 (S.D. Tex. 2019) ................................................. 7

*Patrick v. Whitaker*,
   2019 WL 588465, n.36 (S.D. Tex. 2019) ........................................... 10

*Patterson v. Johnson*,
   184 F.3d 816 (5th Cir. 1999) ................................................................ 8

*Pierre v. United States*,
   525 F.2d 933 (5th Cir. 1976) ..................................................... 8, 11, 12

*Poree v. Collins*,
  866 F.3d 235 (5th Cir. 2017) ........................................................................ 9

*Ramirez-Mejia v. Lynch*,
  794 F.3d 485 (5th Cir. 2015) ........................................................................ 7

*Roark v. Flanery*,
  2014 WL 4447451 (E.D. Tex. 2014) ........................................................ 19

*Rosa v. McAleenan*,
  2019 WL 5191095 (S.D. Tex. 2019) ...................................................... 8, 10

*Rourke v. E.G. Thompson*,
  11 F.3d 47 (5th Cir. 1993) .......................................................................... 13

*Ruiz v. Campos*,
  547 F. Supp. 2d 682 (W.D. Tex. 2008) .................................................... 10

*Sacal-Micha v. Longoria*, 1:20-CV-37,
  2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) ................................... *passim*

*Sacal-Micha v. Longoria*, 1:20-CV-37,
  2020 WL 1815691 (S.D. Tex. Apr. 9, 2020) .......................... 10, 13, 17

*Sandler v. Anderson*,
  2008 WL 2610130 (W.D. Mo. 2008) ........................................................ 19

*Sarres Mendoza v. Barr*,
  2019 WL 1227494 (S.D. Tex. 2019) ........................................................ 10

*Schipke v. Van Buren*,
  239 F. App'x. 85 (5th Cir. 2007) .............................................................. 8, 9

*Shepherd v. Dallas County*,
  591 F.3d 445 (5th Cir. 2009) ............................................................... 14, 15

*Spencer v. Bragg*,
  310 F. App'x 678 (5th Cir. 2009) ............................................................... 9

*Springer v. Underwood*,
  2019 WL 3307220 (N.D. Tex. 2019) ........................................................ 10

*United States v. Kerr*,
  2020 WL 1529180 (N.D. Tex. Mar. 31, 2020) ........................................ 26

*United States v. Munguia*,
  2020 WL 1471741 (N.D. Tex. Mar. 26, 2020) ........................................ 26

*United States v. Robinson*,
  2009 WL 1507130 (S.D. Tex. 2009) .......................................................... 9

*Valentine v. Collier*,
  No. 20-20207, 2020 WL 1934431 (5th Cir. Apr. 22, 2020) ............... 15, 24

*Verma v. Doll*,
  2020 WL 1814149 (M.D. Pa. Apr. 9, 2020) ............................................ 26

## TABLE OF AUTHORITIES
### Cont'd

*Wells v. Thaler*,
  460 F. App'x 303 (5th Cir. 2012) ........................................................................... 21
*Whitaker v. Livingston*,
  732 F.3d 465 (5th Cir. 2013) ................................................................................... 6
*Williams v. Meese*,
  926 F.2d 994 (10th Cir. 1991) ............................................................................... 19
*Youngberg v. Romeo*,
  457 U.S. 307 (1982) .............................................................................................. 26
*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ........................................................................................ 12, 25

## Statutes

8 U.S.C. § 1229a ..................................................................................................... 2
8 U.S.C. § 1231 ..................................................................................................... 12
8 U.S.C. § 1231(a)(3) ............................................................................................ 12
8 U.S.C. § 1252(b)(9) ............................................................................................ 20
28 U.S.C. § 2241 ..................................................................................................... 8
29 U.S.C. § 794a(a)(2) .......................................................................................... 18
42 U.S.C. § 1983 ................................................................................................. 9, 10
28 U.S.C. § 2241(c) ................................................................................................. 8

**SEALED EXHIBITS**

| Number | Description |
|--------|-------------|
| 1 | Record of Deportable/Inadmissible Alien |
| 2 | Notice of Expedited Removal |
| 3 | Notice to Appear |
| 4 | 06/24/2019 Immigration Court Order |
| 5 | Proof of Service for Plaintiff's Immigration Court Exhibits |
| 6 | First Page of Immigration Court Hearings held on 05/10/2019, 06/07/2019, 06/11/2019, and 06/24/2019 |
| 7 | 06/24/2019 Transcript of Immigration Court's Oral Order and Addendum to Oral Decision of the Immigration Judge |
| 8 | 12/12/2019 Board of Immigration Appeals Decision |
| 9 | Petition for Review to the Fifth Circuit Court of Appeals |
| 10 | Petition for Review Docket Sheet (No. 20-60038) |
| 11 | 02/27/2020 Fifth Circuit Order Denying Motion to Stay Removal |
| 12 | ICE Guidance Regarding Custody Reviews (04/04/2020) |
| 13 | ICE ERO COVID-19 Pandemic Response Requirements (04/10/2020) |
| 14 | Declaration of Jose Garcia Longoria |
| 15 | Declaration of Dr. Maribel Cantu |
| 16 | Selected Medical Records |
| 17 | 2014 News Article |
| 18 | 2016 Ugandan Chief Magistrate Court Notice |

**SUMMARY**

Steven Tendo (Plaintiff) asks that this Court order his immediate release from detention at the Port Isabel Detention Center (PIDC) because he claims that U.S. Immigration and Customs Enforcement (ICE) cannot keep him safe during the current pandemic. In effect, he argues that immigration detention has become per se unconstitutional for diabetics such as himself. Plaintiff, however, does not state a claim. The Fifth Circuit does not recognize a conditions-of-confinement-based habeas corpus claim. And a cause of action against the federal government directly under the Constitution is similarly not cognizable. Even if these claims could be brought in the Fifth Circuit, Plaintiff has only pled the potential introduction of a disease coupled with typical conditions of a detention facility—allegations the Fifth Circuit has made clear do not amount to a constitutional violation. Moreover, the evidence submitted here shows these allegations are without merit and do not warrant release.

As to Plaintiff's remaining claims under the Rehabilitation Act (RA), to the extent that such a cause of action is even before the Court in his temporary restraining order (TRO) motion, he fails to state a claim because the RA's remedies section does not provide for a private right of action for a detainee against ICE. Plaintiff also failed to allege any facts that he has been treated differently by reason of his diabetes, and his failure-to-accommodate allegations are conclusory. And even if Plaintiff pled an RA claim, he cites to no authority that suggests that detainees subject to detention under immigration statutes may seek release under the RA.

**BACKGROUND**

## I. Factual allegations / Undisputed facts.

Plaintiff is a thirty-five year old citizen of Uganda. [Dkt. 1, "Pet." ¶ 26.] On December 20, 2018, he presented himself for admission at a port of entry in Brownsville, Texas to seek asylum. [Ex. 1.] U.S. Customs and Border Protection (CBP) placed Plaintiff in expedited removal

proceedings, charging him as inadmissible under Immigration and Nationality Act (INA) §
212(a)(7)(A)(i)(I), 8 U.S.C. §1182(a)(7)(A)(i)(I).[1] [Ex. 2.] Plaintiff was transferred to ICE custody
at the PIDC. [Pet. ¶ 26.] As Plaintiff expressed a fear of returning to Uganda, he was referred to
U.S. Citizenship and Immigration Services (USCIS) for a credible fear interview. [*Id.*] An asylum
officer interviewed Plaintiff and determined that he had established a credible fear of persecution.
[*Id.*] On January 16, 2019, Plaintiff was issued a Notice to Appear (NTA) and placed in full
removal proceedings under 8 U.S.C. § 1229a so that he could seek relief from an immigration
judge. [Ex. 3.]

Plaintiff submitted an application for asylum and withholding of removal. [Ex. 4.] Plaintiff
submitted his supporting documents for the immigration court's consideration on March 13 and
March 19, 2019. [Ex. 5.] The merits hearing on Plaintiff's application was set for May 10, 2019,
and over the course of several days—May 10, June 7, June 11, and June 24, 2019—the immigration
court held a hearing, where the immigration judge (IJ) heard testimony and written evidence
regarding Plaintiff's asylum application. [Ex. 6.][2] On June 24, 2019, the IJ issued an oral decision
and addendum, wherein he ordered that Plaintiff's application for asylum and for withholding of
removal were denied, and he ordered that Plaintiff was to be removed to Uganda. [Exs. 4, 7.]

Plaintiff appealed the IJ's decision to the Board of Immigration Appeals (BIA). [Ex. 8.]
Both parties filed appellate briefs and Plaintiff also filed a motion to remand. [*Id.*] On December

---

[1]     8 U.S.C. § 1182(a)(7)(A)(i)(I) states in its entirety:

**(7) Documentation requirements**
**(A) Immigrants**
**(i) In general**
Except as otherwise specifically provided in this chapter, any immigrant at the time of application for
admission--(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing
identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other
suitable travel document, or document of identity and nationality if such document is required under the regulations
issued by the Attorney General under section 1181(a) of this title . . . is inadmissible.

[2]     Exhibit 6 contains only the first pages of the hearing transcripts to identify the days on which the hearing was
held. The total number of pages of the hearing transcript is 255 pages.

12, 2019, the BIA affirmed the IJ's decision and denied Plaintiff's motion to remand. [*Id.*] On January 13, 2020, Plaintiff filed a petition for review with the Fifth Circuit Court of Appeals. [Ex. 9.] On January 28, 2020, Plaintiff filed a motion for stay of removal and the Government filed its response in opposition on February 7, 2020. [Ex. 10.] On February 27, 2020, the Fifth Circuit denied Plaintiff's motion for stay of removal pending review. [Ex. 11.] On April 10, 2020, Plaintiff filed his appellate brief with the Fifth Circuit. [Ex. 10.] On April 18, 2020, Plaintiff filed a renewed motion for stay of removal with the Fifth Circuit; it remains pending. [*Id.*]

Additionally, Plaintiff's counsel requested that ICE release Plaintiff on parole on April 7, 2020. [Pet. ¶ 31.] ICE denied the request on April 15, 2020. [*Id.*]

On April 23, 2020, Plaintiff filed his habeas petition and original complaint, and appears to assert the following claims for relief: *first*, that the Court issue a writ of habeas corpus to order Plaintiff released from PIDC due to the "conditions of confinement" he is experiencing; *second*, that the Court order, under a due process and/or Rehabilitation Act theory, that Defendants are to "provide [Plaintiff] with protection from the risk of contracting COVID-19 by ameliorating all conditions that are undermining [his] health"; and *third*, that the Court declare that Plaintiff's detention is unlawful and unconstitutional. [Pet. ¶¶ 39-58; Prayer.] On April 27, 2020, Plaintiff filed a separate TRO motion wherein he requests that this Court "order his immediate release from custody." [Dkt. 5; Dkt. 5-1 at 28.]

## II. Relevant ICE Actions in Regard to the COVID-19 Pandemic.

*ICE Guidance Regarding Custody Reviews.* On April 4, 2020, Peter Berg, an Assistant Director of Field Operations with ICE, circulated guidance to ICE officers regarding the review of cases of aliens who may be at higher risk for serious illness from COVID-19. [Ex. 12.] Expanding on its earlier instruction to review the cases of aliens over age 70 or who are pregnant, ICE

Enforcement and Removal Operations (ERO) identified several categories of cases to be reviewed to re-assess custody: pregnant detainees or those having recently delivered babies; detainees over 60 years old; detainees of any age with chronic illness, including blood disorders, chronic kidney disease, compromised immune systems, endocrine disorders, metabolic disorders, heart disease, lung disease, and neurological or neurodevelopment conditions. [*Id.* at 1–2.] The guidance notes, however, that the presence of one of these favors "may not always be determinative." [*Id.* at 2.]

*ICE ERO COVID-19 Pandemic Response Requirements.* On April 10, 2020, ICE expanded on its earlier guidance and issued COVID-19 Pandemic Response Requirements (PRR) setting forth expectations and assisting ICE detention facility operators to sustain detention operations while mitigating the risk of COVID-19. [Ex. 13 at 3.] The PRR was "developed in consultation with the Centers for Disease Control and Prevention and is a dynamic document that will be updated as additional/revised information and best practices become available." [*Id.*] Among other requirements, the PRR mandates that all ICE detention facilities comply with CDC guidance. [*Id.* at 5–6.] It sets forth in detail specific requirements for staffing, supplies, hygiene, and cleaning practices. [*Id.* at 8–10.] It also provides screening questions for all staff and new entrants. [*Id.* at 12.] And it provides measures to encourage social distancing. [*Id.* at 13–14.] Finally, it sets forth procedures in the event of a positive COVID-19 case. [*Id.* at 14–16.]

*Port Isabel Detention Center.* The Port Isabel Detention Center (PIDC), where Plaintiff is detained, has taken numerous steps to prevent the introduction of COVID-19 into the facility. The facility is following ICE ERO's COVID-19 Pandemic Response Requirements. [Ex. 14, "Longoria Dec." ¶ 4; Ex. 15, "Cantu Dec." ¶ 7.] The facility is operating well below its capacity, and is not overcrowded. [Longoria Dec. ¶ 10; Cantu Dec. ¶ 14.] There are currently no suspected cases and no confirmed cases of COVID-19 among the detainee population at PIDC. [Cantu Dec. ¶ 13.] As

for staff, one contract worker previously tested positive on or about April 1, 2020, and that worker was not permitted to return to work. [Longoria Dec. ¶ 7.] The contract worker had no contact with PIDC detainees, and the other contract workers with whom he came into contact were sent home and only returned to work after finishing a 14-day quarantine and testing negative. [*Id.*] There are no other suspected or confirmed cases among ICE employees or contract workers at PIDC. [*Id.* ¶ 8.]

All staff and vendors are screened when they enter PIDC, including via body temperature. [Cantu Dec. ¶ 15.] All incoming detainees are likewise screened for fever and respiratory illness, and detainees are asked about their medical histories, recent exposure to any person who has tested positive for COVID-19, and recent travel history including through any areas where sustained transmission may have taken place. [*Id.* ¶¶ 9, 15.] Any detainee presenting with symptoms is isolated and tested. [*Id.* ¶ 10.] If positive, the detainee will remain isolated and receive treatment. [*Id.*] If necessary, the detainee will be transported to a local hospital for treatment. [*Id.*] In the case of known exposure, asymptomatic detainees will be placed in "cohorts" with restricted movement for 14 days.[3] [*Id.* ¶ 11.] Cohorting is an infection-prevention strategy that houses detainees together who were potentially exposed to a person with an infectious organism but are asymptomatic. [*Id.*] During the cohort, detainees undergo daily temperature checks and symptom screening. [*Id.*] They also have daily access to health care via the sick call process and, if necessary, can utilize the onsite medical infirmary. [*Id.* ¶¶ 11, 12.] Detainees and staff are also educated on COVID-19 prevention

---

[3]     "Cohorting refers to the practice of isolating multiple laboratory-confirmed COVID-19 cases together as a group, or quarantining close contacts of a particular case together as a group." *See* "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities," U.S. Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (accessed April 27, 2020).

procedures. [*Id.* ¶ 17.] Common areas and detainee pods are disinfected twice daily, masks and gloves are distributed, and access to hand sanitizer and soap have increased. [Longoria Dec. ¶ 9.]

## ISSUES PRESENTED

1. Whether Plaintiff has met his burden of establishing a substantial likelihood of success on the merits, as required to obtain a TRO that alters the status quo.

2. Whether, as to the remaining equitable elements, Plaintiff has demonstrated the required "clear entitlement" to a TRO that alters the status quo.

## STANDARD OF REVIEW

"To obtain a temporary restraining order or preliminary injunction, a plaintiff must establish the following elements by a preponderance of the evidence: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that irreparable injury will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) granting the preliminary injunction will not disserve the public interest. *Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760, 763 (S.D. Tex. 2008) (citing *Karaha Bodas Co. v. Perusahaan Pertambangan*, 335 F.3d 357, 363 (5th Cir. 2003)).

This standard is a "difficult" and "stringent" one for the movant to meet, and the movant bears "the burden of establishing each element." *Whitaker v. Livingston*, 732 F.3d 465, 469 (5th Cir. 2013); *Janvey v. Alguire*, 647 F.3d 585, 591, 595 (5th Cir. 2011)). The Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (quotation omitted). "The failure of a movant to establish one of the above four elements will result in the denial of a motion for temporary injunction." *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th

Cir. 1989). Accordingly, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

This standard is heightened even further for mandatory injunctions that seek to alter the status quo. In those settings, a plaintiff "bears the burden of showing a clear entitlement to the relief under the facts and the law." *Justin Indus., Inc. v. Choctaw Secs.*, L.P., 920 F.2d 262, 268 n.7 (5th Cir. 1990); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo . . . , is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

## ARGUMENT

### I. Plaintiff has not shown a substantial likelihood of success on the merits.

Likelihood of success on the merits is a threshold issue, and Plaintiff's habeas claims, Constitutional claims, and Rehabilitation Act are unlikely to succeed on the merits.[4]

### a. Plaintiff's habeas corpus claims.

Plaintiff challenges the conditions of his confinement under habeas and requests that the Court order his release. [Dkt. 5-1 at 17.] This Court lacks jurisdiction, or Plaintiff fails to state a claim, for two reasons: (1) a habeas petition seeking release based on conditions of confinement is improper; and (2) the Court lacks habeas jurisdiction because Plaintiff's detention is lawful.

---

[4]     Additionally, Plaintiff states that his request for parole was denied "with no reasons given for the denial." [Pet. ¶ 31.] To the extent Plaintiff challenges the decision to deny him parole, this Court lacks jurisdiction. *See Sacal-Micha v. Longoria*, 1:20-CV-37, 2020 WL 1518861, at *7 (S.D. Tex. Mar. 27, 2020) ("Title 8, United States Code, Section 1182(d)(5)(A) places the decision of granting parole within the discretion of DHS. . . . Because the applicable statute places this decision solely within DHS discretion, this Court lacks jurisdiction to review it.") (citing *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 491 n.1 (5th Cir. 2015)); *see also Palacios v. Dep't of Homeland Sec.*, 407 F. Supp. 3d 691, 698 (S.D. Tex. 2019) ("[T]his court lacks jurisdiction to review denials of parole under the Immigration and Nationality Act because these actions are committed to agency discretion by law.") (quotations omitted).

**1. Plaintiff may not challenge the conditions of his confinement through a habeas petition seeking immediate release.**

Plaintiff argues that "[a] writ of habeas corpus is necessary to remedy the unconstitutional violations"—via "immediate release" or "conditional release"—to ensure he "receives necessary and timely medical care" and "remove the unreasonable risk that [he] will contract COVID-19." [Pet. ¶¶ 47 & Prayer.] Plaintiff's habeas challenge to the conditions of his detention fails because habeas is not the appropriate vehicle to challenge conditions or the adequacy of medical care.

An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The Fifth Circuit has held that, "[H]abeas is not available to review questions *unrelated to the cause of detention*. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Patterson v. Johnson*, 184 F.3d 816 (5th Cir. 1999) (emphasis added) (citing *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)); *accord Sacal-Micha v. Longoria*, 2020 WL 1518861, at *3 (S.D. Tex. Mar. 27, 2020); *Rosa v. McAleenan*, 2019 WL 5191095, at *14 (S.D. Tex. 2019). Thus, "[a]llegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x. 85, 85–86 (5th Cir. 2007). The Fifth Circuit follows a bright line rule: "If a favorable determination . . . would not automatically entitle [the detainee] to accelerated release, . . . the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (internal citations omitted); *accord Sacal-Micha*, 2020 WL 1518861, at *3.

The Fifth Circuit, and district courts within this Circuit, have long recognized that habeas corpus actions are the proper vehicle to "challenge the fact or duration of confinement," whereas

allegations that challenge an individual's "conditions of confinement" are "properly brought in civil rights actions." *Schipke v. Van Buran*, 239 F. App'x 85, 85–86 (5th Cir. 2007); *see also Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017) (noting the "instructive principle that challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought under [civil rights actions]") (citations omitted); *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990) (holding that claims of overcrowding, denial of medical treatment, and access to an adequate law library were not proper subjects of a habeas corpus petition); *Livas v. Myers*, 2020 WL 1939583, at *8 (W.D. La. Apr. 22, 2020) ("Neither party nor this Court found a single precedential case in the Fifth Circuit . . . allowing conditions of confinement claims to be brought under § 2241."); *United States v. Robinson*, 2009 WL 1507130, at *4 (S.D. Tex. 2009) ("Claims concerning the conditions of confinement are actionable, if at all, under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and not under the habeas corpus statutes.").

Even when a petitioner alleges that inadequate conditions of confinement create the risk of serious physical injury, illness, or death, a petition for a writ of habeas corpus is not the proper vehicle for such a claim. *See, e.g.*, *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) (affirming the lower court's dismissal of petitioner's habeas claim even though he alleged that the conditions of confinement endangered his life); *Northup v. Thaler*, 2012 WL 4068676, at *2 (S.D. Tex. 2012), *rep. & rec. adopted*, 2012 WL 4068997 (S.D. Tex. 2012) (dismissing petitioner's habeas claim based on alleged risk of abuse by other inmates).

The same is true in the civil immigration context. When a Mexican national (Sacal) recently sought release from PIDC due to concerns for COVID-19, another court in this division dismissed the habeas petition. As that court determined, "Sacal's allegations focus on the conditions of

confinement, as a detention facility's protocols for isolating individuals, controlling the movement of its staff and detainees, and providing medical care are part and parcel of the conditions in which the facility maintains custody over detainees." *Sacal-Micha v. Longoria*, 1:20-CV-37, 2020 WL 1815691, at *4 (S.D. Tex. Apr. 9, 2020) (Rodriguez, J.) (citing cases). Thus, the court held that because "Sacal challenges the conditions of his confinement at PIDC, he cannot rely on a petition for writ of habeas corpus to obtain the relief [i.e., release] he requests,"—and the claim was subject to dismissal for failure to state a claim upon which relief can be granted. *Id.* at *6.

Likewise, when civil Border Patrol detainees sought release from custody to cure allegedly unconstitutional conditions, the court noted:

> Any person in custody can obtain relief from allegedly inadequate conditions by being released, but this fact does not create a permissible habeas corpus claim when the complaint turns on the conditions of confinement. As a result, Petitioners' allegations fall squarely within those cases concluding that the presented cause of action did not present a cognizable claim for habeas corpus relief.

*Rosa*, 2019 WL 5191095, at *18; *see also Sarres Mendoza v. Barr*, 2019 WL 1227494, at *2 (S.D. Tex. 2019) (denying Honduran detainee's motion for leave to amend because the proposed claims on "conditions of confinement may not be brought in a habeas corpus proceeding, and are actionable, if at all, in a civil rights action"); *Patrick v. Whitaker*, 2019 WL 588465, at *4, n.36 (S.D. Tex. 2019), *appeal dism'd*, 2019 WL 4668409 (5th Cir. 2019) (ICE detainee's "motion for leave to file supplemental pleadings concerning the conditions of his confinement" denied because his "proposed claims are not actionable under 28 U.S.C. § 2241.").[5]

---

[5]    *See also Springer v. Underwood*, 2019 WL 3307220, at *2 (N.D. Tex. 2019), *rec. & report adopted*, 2019 WL 3306130 (N.D. Tex. 2019) (holding that inmate's request for a "reduction in his sentence" due to alleged "exposure to asbestos and mold" "does not convert his civil rights claims to habeas claims"); *Benitez-Garay v. Dep't of Homeland Sec.*, 2019 WL 542035, at *5 (W.D. Tex. 2019) ("Claims . . . asserting that treatment while in custody renders that custody illegal, are claims that state and federal prisoners typically raise in federal court pursuant to 42 U.S.C. § 1983 and *Bivens* [] and fall outside the historical core of the writ of habeas corpus.") (omitting internal citation); *Ruiz v. Campos*, 547 F. Supp. 2d 682, 685 (W.D. Tex. 2008) (holding that detainee "fails to establish cognizable claims under § 2241" based on his conditions of confinement allegations).

The instant case is no different. Plaintiff argues that "[e]fforts to prevent the introduction and the spread of COVID-19 within the detention center are simply impossible in the conditions that prevail at [PIDC]." [Pet. ¶ 30.] And he seeks a writ of habeas corpus to have this Court order his "immediate" or "conditional release" on this basis. [*Id.* ¶¶ 47 & Prayer.] Thus, as in *Sacal*, the crux of this case is that Plaintiff challenges the conditions of his confinement, and his habeas petition should similarly be dismissed for failure to state a claim upon which relief can be granted.

Finally, Plaintiff argues, "[i]n this Circuit, it is clear that habeas authorizes challenges to the fact or duration of detention" and "[i]t is less clear whether habeas authorizes challenges to conditions of confinement." [Dkt 5-1 at 27.] In other words, he attempts to recast his conditions claim to one challenging the "fact" of confinement, or alternatively, to suggest that conditions challenges may be authorized under habeas. Two brief points should made. First, there is no dispute that Plaintiff, like Sacal, challenges the conditions of his detention at PIDC (and ICE's ability to keep him safe) in light of the COVID-19 pandemic, and he fails to cite to a single precedential decision from the Fifth Circuit allowing conditions claims to be brought under habeas. Second, Plaintiff does not actually challenge the fact or length of his detention because he does not ask this Court to review "the cause of [his] detention. *See Pierre*, 525 F.2d at 935–36. The Court should thus dismiss Plaintiff's habeas petition.

## 2. Habeas is also unavailable because Plaintiff's custody is lawful.

Habeas is meant to correct unlawful custody. Plaintiff's detention here is lawful because ICE has legal authority to detain him: he was ordered removed on June 24, 2019, and the BIA affirmed the IJ's decision on December 12, 2019. [Exs. 4, 7, 8.] Thus, the removal order became administratively final on December 12, 2019. *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Id.* § 1101(a)(47)(B)(i); *see also Agyei-Kodie v. Holder*, 418 F. App'x. 317, 318 (5th Cir. 2011) ("The removal

order became administratively final . . . when the [BIA] dismissed the appeal of the immigration judge's decision."). Plaintiff's current detention "is now governed by 8 U.S.C. § 1231," which provides that the alien shall be removed "within a period of 90 days, during which time the alien *shall be detained*." *See Agyei-Kodie*, 418 F. App'x. at 318 (emphasis added) (citing 8 U.S.C. § 1231(a)(1)(A), (a)(2)). However, if an alien "is not removed within the 90–day period," he may be detained beyond that time or released subject to supervision. *Id.* (citing 8 U.S.C. § 1231(a)(3), (6)). Thus, "[i]t is presumptively constitutional for an alien to be detained for six months after a final order of removal." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)); *see also Clark v. Martinez*, 543 U.S. 371 (2005) (extending *Zadvydas* to arriving aliens on statutory grounds).

Thus, to the extent Plaintiff attempts to raise a prolonged detention issue (despite not pleading such a cause of action in his complaint or his TRO motion), his habeas claim is premature because he had not been in post-removal detention longer than six months when he filed suit. *See Chance v. Napolitano*, 453 F. App'x. 535, 536 (5th Cir. 2011) ("Chance had not been in postremoval-order detention longer than the presumptively reasonable six-month period set forth in *Zadvydas* . . . . Consequently, the district court did not err in finding that his challenge to his continued post removal detention was premature."); *Okpoju v. Ridge*, 115 F. App'x. 302 (5th Cir. 2004) ("The district court properly denied Okpoju's claim regarding his continued detention as premature because, at the time of the district court's ruling, Okpoju had not yet been in custody longer than the presumptively reasonable six-month post removal order period."); *Lawal v. Lynch*, 156 F. Supp. 3d 846, 853 (S.D. Tex. 2016) ("the six-month period after the removal order must have expired when the § 2241 petition was filed to state a claim under *Zadvydas*").

Further, Plaintiff does not challenge the lawfulness of his ICE custody, or the "cause of [his] detention" at PIDC. *See Pierre*, 525 F.2d at 935–36. Thus, Plaintiff "cannot avail himself of

the writ of habeas corpus" here because he "seek[s] injunctive relief unrelated to the cause of his detention." *See Rourke*, 11 F.3d at 49. Accordingly, habeas is unavailable at this time because ICE has lawful authority to detain Plaintiff.

### b. Plaintiff's Constitutional claims.

#### 1. Plaintiff's direct Constitutional claims are not cognizable.

Plaintiff appears to assert a claim against ICE directly under the Due Process Clause of the Constitution seeking release, based on the conditions of his confinement. [Pet. ¶¶ 39-48.] However, to the extent he asserts direct causes of action under the Constitution, he has not shown that he is permitted to do so in the Fifth Circuit, outside the *Bivens* context. "Although there have been a few notable exceptions, the federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution." *Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (rejecting a freestanding constitutional complaint against the FBI); *see also Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (citing *Bivens* as one "notable exception" to the general rule). Recognizing a cause of action directly under the Fifth Amendment to order Plaintiffs' release would be a departure from Fifth Circuit precedent. *See Sacal-Micha*, 2020 WL 1815691, at *5–6.

#### 2. Defendants' steps taken to prevent COVID-19 spread show that they are neither punishing Plaintiff nor deliberately indifferent to his needs.

Even if a direct constitutional claim were cognizable in this Circuit, Plaintiff has not pled it. Further, the evidence here shows that Defendants have not violated Plaintiff's due process.

The government owes the "same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees[6] and convicted inmates with basic human needs,

---

[6]    *See Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment.").

including medical care and protection from harm, during their confinement."[7] *See Hare v. City of Corinth*, 74 F.3d 663, 650 (5th Cir. 1996). "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

Under Fifth Circuit case law, "isolated examples of illness, injury, or death, standing alone, cannot prove that conditions of confinement are constitutionally adequate. Nor can the incidence of diseases or infections, standing alone, . . . since any densely populated residence may be subject to outbreaks." *Id.* at 454. A detainee does not establish a case simply by alleging that a detention facility has disease or infection present or that it may in the future. "Rather, [in a true detention conditions case,] a detainee . . . must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs." *Id.* Alternatively, if the detainee challenges an officer's episodic act or omission, he must demonstrate that the official acted with deliberate indifference to his medical needs or safety. *See, e.g.*, *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Officials disregard a risk to an inmate when they "refuse[] to treat him, ignore[] his complaints, intentionally treat[] him incorrectly, or engage[] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Here, Plaintiff appears to bring a challenge against Defendants under both theories, and he argues that "[e]fforts to prevent the introduction and the spread of COVID-19 within the detention center are simply impossible in the conditions that prevail at PISPC." [Pet. ¶ 30; Dkt. 5-1 at 18-22.]

---

[7]  Moreover, there is binding precedent that stands for the proposition that arriving/excludable aliens only have a Fifth Amendment substantive due process right to be free from gross physical abuse. *See Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1442 (5th Cir. 1993), *amended*, 997 F.2d 1122 (5th Cir. 1993); *Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir. 1987); *see also Asturias v. Smith*, 2016 WL 4435702, at *4 (N.D. Ala. 2016), *rep. & rec. adopted*, 2016 WL 4379522 (2016) (suggesting that under *Lynch*, arriving aliens are subject to a different standard for proving a conditions of confinement claim and that the Fifth Circuit's decision in *Edwards* only applies to non-arriving aliens).

In other words, Plaintiff argues that immigration detention is now per se unconstitutional because he is detained with others in typical detention-facility conditions and cannot exercise social distancing. *See* Dkt. 5-1 at 13 ("Efforts to prevent the introduction and the spread of COVID-19 within the detention center are simply impossible . . ."); *Id.* at 24 ("Short of release, there are not sufficient measures, be they preventive or palliative, that Defendants can implement to protect Mr. Tendo from crowded and unsanitary conditions"). But the Supreme Court has noted, contrary to Plaintiff's argument, that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Moreover, even taking Plaintiff's allegations as true, the Fifth Circuit expressly forecloses Plaintiff's claim: "any densely populated residence may be subject to outbreaks," and the existence of a disease does not state a constitutional violation. *Shepherd*, 591 F.3d at 454.

The Fifth Circuit recently reaffirmed this principle in the context of COVID-19 in staying the preliminary injunction order against the Texas Department of Criminal Justice (TDCJ) relating to its COVID-19 prevention procedures. *Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *3 (5th Cir. Apr. 22, 2020) (citing *Shepherd*, 591 F.3d at 454). Where the district court imposed detailed procedures on TDCJ, going beyond CDC guidance and impeding TDCJ's ability to adapt to changing circumstances, the Fifth Circuit noted that TDCJ is likely to prevail on the merits of its appeal. *See id.* at *3–4. In staying the district court's injunction against TDCJ, the Fifth Circuit found that Texas prisoners challenging the prisons' COVID-19 measures failed to show deliberate indifference because "the evidence shows that TDCJ has taken and continues to take measures— informed by guidance from the CDC and medical professionals—to abate and control the spread of the virus." *Valentine*, 2020 WL 1934431, at *4. The same is true here.

The Port Isabel Detention Center has taken extensive measures to abate and control the spread of COVID-19:

- PIDC is following ICE ERO's COVID-19 Pandemic Response Requirements. [Longoria Dec. ¶ 4; Cantu Dec. ¶ 7.]

- Necessary visitors are screened, including via body temperatures. [Cantu Dec. ¶ 15.]

- All detainees are screened at intake. [*Id.* ¶¶ 9, 16.] They are assessed for fever and respiratory symptoms, are asked to confirm if they had close contact with a person with COVID-19, and whether they have traveled through areas with his rates of the virus. [*Id.*]

- Any detainee presenting with symptoms is to be isolated and tested. [*Id.* ¶ 10.] If positive, the detainee is to remain isolated and receive treatment. [*Id.*] If necessary, the detainee will be transported to a local hospital for treatment. [*Id.*]

- In the case of known exposure, asymptomatic detainees are to be placed in cohorts with restricted movement for 14 days. [*Id.* ¶ 11.]

- The medical facility provides daily access to sick calls in clinical settings and has an onsite medical infirmary. [*Id.* ¶ 12.]

- Detainees are also educated on COVID-19 prevention procedures. [*Id.* ¶ 17.]

- Common areas and pods are disinfected twice daily. [Longoria Dec. ¶ 9.] Detainees have access to and are given masks and gloves. [*Id.*] Detainees have more access to soap and hand sanitizer in the common areas and pods; it is also available upon request. [*Id.*]

Further, as to Plaintiff's medical needs specifically, the Port Isabel Detention Center has taken the following steps:[8]

- Plaintiff has been prescribed appropriate diabetic medication since his arrival, as well as numerous other medications as needed. [Cantu Dec. ¶ 19.] There have been documented instances of non-compliance with medication: Plaintiff does not want to go to the "pill line" for his medication multiple times a day, but PIDC is trying to monitor his medication intake to ensure compliance. [Ex. 16 (April 10-12, 2020 entries).]

---

[8] Defendants have only attached selected medical records. Defendants could not file the approximately 930 pages of Plaintiff's medical records (as of April 24, 2020), or describe in detail herein their contents. However, should the Court so request, Defendants will provide a courtesy copy of Plaintiff's medical records to the Court's chambers. It appears Plaintiff's counsel already has a copy of these records. [*See* Dkt. 5-1 at 13.]

- Plaintiff's blood sugar levels are measured twice daily by nurses. [Cantu. Dec. ¶ 20.] He is not permitted to possess a "finger-pricking device" as a safety measure to protect detainees and staff because the small needle in the device is subject to "tool control" under ICE's national detention standards. [*Id.* ¶ 20.]

- Plaintiff was prescribed a diabetic diet and diabetic snack bags since his arrival in December 2018. [*Id.* ¶ 21.] The purpose of this diet is to help control his high blood glucose. [*Id.*] Plaintiff has admitted that, since January 2020, he has been fasting from 6:00 a.m. to 6:00 p.m. for the first half of the month, and purchasing (non-diabetic diet) foods from the commissary. [*Id.* ¶ 24; Ex. 16 (04/10/20 entry).] Plaintiff has been advised that fasting may affect his blood sugar control and that he should seek approval from the chaplain for a fasting diet. [Cantu. Dec. ¶ 24.] Plaintiff's diabetes were not controlled when he was admitted to PIDC, but he obtained control in subsequent months. [*Id.* ¶ 23.] However, since January 2020, his average blood glucose has been elevated. [*Id.*]

- Plaintiff was taken to an optometrist in early March 2020 for an eye issue; the recommendation was to maintain control over his diabetes and "observation." [*Id.* ¶ 22.] Cataract removal was not recommended based on his visual acuity at that time. [*Id.*] However, Plaintiff was again taken to an optometrist in mid-April 2020 for eye pain; and due to worsening visual acuity noted during that visit, he has been scheduled to see an ophthalmologist in May 2020 for cataract evaluation. [*Id.*]

Based on the above-described steps that Defendants have taken to protect Plaintiff and other detainees during the pandemic, as well as to meet Plaintiff's specific medical needs, Plaintiff cannot show a constitutional violation. *See Sacal-Micha*, 2020 WL 1815691, at *6 ("But ultimately, Sacal does not assert that Respondents are doing nothing to protect him, other detainees, and staff members from COVID-19, but only that Respondents are not doing *enough*. . . . Courts have refused to provide habeas relief even when the claimed inadequacies allegedly placed the petitioner in grave peril.") (emphasis in original). Further, to the extent Plaintiff argues that all the steps taken by Defendants are still inadequate to "fully guarantee [his] safety," that is not the applicable standard, and release is still not warranted. *See Sacal-Micha*, 2020 WL 1518861, at *6. ("[I]t is possible that despite ICE's best efforts, Sacal may be exposed and contract the virus. . . . But the fact that ICE may be unable to implement the measures that would be required to fully

guarantee Sacal's safety does not amount to a violation of his constitutional rights and does not warrant his release."); *see also Jorge V. S. v. Green*, 2020 WL 1921936, at *3 (D.N.J. Apr. 21, 2020) ("That these steps [by ICE in accordance with CDC guidance for detention facilities] do not guarantee Petitioner will remain healthy and free of the disease is immaterial, the constitution requires no such perfection."); *Dawson v. Asher*, 2020 WL 1704324, at *12 (W.D. Wash. Apr. 8, 2020) ("No one can entirely guarantee safety in the midst of a global pandemic. However, the standard . . . is not guaranteed safety—an impossible standard to meet no matter the circumstances—but rather a likelihood of irreparable harm.").

     **c. Plaintiff's Rehabilitation Act claims.**

        **1. Courts across the country do not recognize RA claims by federal detainees, and Plaintiff's claims relating to his removal procedures are barred.**

Plaintiff's complaint brings claims under Section 504 of the Rehabilitation Act (RA) and alleges that Defendants have failed to provide reasonable accommodations for his disabilities and have excluded him from federal programs or activities because of his disabilities. He seeks either release from custody or improved conditions, but he does not state what improved conditions he would find satisfactory; rather, he simply alleges that Defendants have failed to "employ[] the only known means of protecting [Plaintiff] from infection." [Pet. ¶ 42.] By contrast, Plaintiff's TRO motion appears to seek relief based on his alleged unconstitutional confinement and only mentions his claims for relief under the RA in passing in a footnote. [Dkt. 5-1 at 20 n. 11.] Thus, it does not appear that a cause of action under the RA is at issue in Plaintiff's TRO motion.

Further, the RA's remedies section does not provide a private right of action for Plaintiff against a federal agency. *See* 29 U.S.C. § 794a(a)(2) (providing causes of action only to those aggrieved by an action of a recipient of federal assistance or a federal provider of assistance); *see also De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 190–91 (S.D.N.Y. 2019).

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Where there is no express private right, courts "begin with the presumption that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007). Here, where the RA expressly provides for causes of action and remedies for certain aggrieved persons but not for those aggrieved by Executive agencies, "there is strong indication that Congress did not intend for a private remedy to accompany the right to be free from discrimination from any Executive agency." *De Dandrade*, 367 F. Supp. 3d at 192. If Plaintiff has a cause of action here, it would be implied only. *See Mathis, v. GEO Group, Inc.*, 2009 WL 10736631, at *6 (E.D.N.C. 2009) (analyzing in depth the availability of a RA claim by a federal detainee against his detention center).

Though Defendants are unaware of a Fifth Circuit ruling on the issue, courts across the country—including a court in this Circuit—have held that federal detainees may not bring RA claims against the federal agencies housing them. *See, e.g.*, *Roark v. Flanery*, 2014 WL 4447451, at *27 (E.D. Tex. 2014) ("[T]he Bureau of Prisons does not fit within the definition of 'programs or activities' governed by § 794(a)."); *Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Colo. 1999) (holding that an immigration detainee could not bring an RA claim against INS, the predecessor to ICE); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (holding that the RA does not apply to federal prisons); *Inko-Tariah v. Lappin*, 2009 WL 8652932, at *1 (E.D.N.C. 2009), *aff'd*, 346 F. App'x 915 (4th Cir. 2009) ("Upon a thorough review of cases interpreting the application of the [RA], the court concludes that the Act does not provide a cause of action for inmates in federal prisons."); *Sandler v. Anderson*, 2008 WL 2610130, at *2 (W.D. Mo. 2008) ("[T]he [RA] does not apply to federal inmates.").

Moreover, even if the RA provided a claim as a general matter, Plaintiff's claims here would be jurisdictionally barred under 8 U.S.C. § 1252(b)(9) and (g). Those sections bar district courts from reviewing challenges to the removal process. When aliens brought due process, Administrative Procedure Act, and RA claims challenging the holding of removal proceedings through video teleconferencing (VTC) because the VTC policy harmed their "ability to meaningfully participate in their removal proceedings," the District Court for the Southern District of New York ruled that it did not have jurisdiction to hear their claims. *P.L. v. U.S. Immigration & Customs Enf't*, 2019 WL 2568648, at *2 (S.D.N.Y. 2019). The court held that challenges to "[h]ow immigrants appear for removal proceedings constitutes part of the process of these proceedings" and therefore are barred under § 1252(b)(9). *Id.* at *3. Because the plaintiffs were challenging "part of the process by which . . . removability will be determined," the court did not have jurisdiction. *Id.* Here, to the extent Plaintiff pleads a lack of access to his removal proceedings, the same would be true. If COVID-19 is preventing Plaintiff from participating in the removal process (as discussed *infra*), that challenge falls squarely within § 1252's bar.

### 2. Even if he could bring RA claims, Plaintiff does not allege or show that he has been excluded from activities or programs because of his disabilities.

The Fifth Circuit has held that claims under Title II of the ADA and claims under § 504 of the Rehabilitation Act be treated identically from a jurisprudential standpoint. *Bennett–Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454–55 (5th Cir. 2005). To make out a prima facie case under Title II or the RA, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or

discrimination is by reason of his disability." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citation omitted).

A public entity's failure to make reasonable modifications or accommodations may constitute denial of services. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). But "[t]he ADA provides for reasonable accommodation, not preferred accommodation." *Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016) (citing *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)). The accommodation of a detainee's disability need not be ideal; instead, it need only be reasonable and effective. *Id.* (citations omitted). Further, courts generally accord detention settings deference in determining the appropriate accommodations. *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) ("[O]ur conclusion that the provided auxiliary aids and services are sufficient is informed by the context of this suit—a correctional facility—and we accord the officials at the Estelle Unit deference in their determination of an appropriate accommodation.").

"The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 n.7 (5th Cir. 2012) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) and *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not . . . hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'")). Instead, Plaintiff must allege that he was "discriminated against based on [his] disability." *Id.* (denying RA claim because "[t]here is no evidence that the allegedly improper action of leaving Nottingham on the floor of the transit van had any connection to his alleged disability" of having a "limited ability to walk").

Here, Plaintiff failed to allege any facts that he has been treated differently by reason of his diabetes. Additionally, Plaintiff alleges only in conclusory fashion that he is being excluded from

the "removal process" and the detention center's services, programs, and activities because of his disability. (Pet. ¶¶ 55.) Plaintiff does not allege, however, that he has actually been unable to attend a court hearing, or to submit any filings, or to speak with his counsel. At this time, Plaintiff has been ordered removed, the removal order has been affirmed by the BIA, and he now has a pending petition for review with the Fifth Circuit. Thus, there are no removal proceedings for him to attend in person at this time. Plaintiff also does not set forth the detention center services, programs, or activities that he has not been able to participate in, or explain how releasing him would allow for his participation. Indeed, under Plaintiff's logic, every detainee claiming a disability must be released under the RA so that they may participate in the services of the detention facility. This proposed solution defeats its own purpose and shows why the RA is an improper vehicle for Plaintiff's grievances: release would totally deny Plaintiff access to detention center services.

Further, Plaintiff's failure-to-accommodate allegations are conclusory: he claims in a conclusory manner that ICE failed to "reasonably accommodate" his disability by failing to "ameliorate the conditions that prevent him from adopting the only known means of protecting himself from infection or by failing to release him." [Pet. ¶ 42.] And to the extent he takes issue with the metformin, or insulin, or diabetic diet he has been prescribed [Dkt. 5-1 at 14, 20 n. 11], such arguments do not advance Plaintiff's claim because the RA does not impose a standard of care in regard to the treatment of diabetes. As to the necessity of a finger-pricking device, such devices have sharp needles and are thus subject to "tool control" for the safety of staff and other detainees, but Plaintiff's blood sugar is still tested daily by pill line nurses. [Cantu Dec. ¶ 20.]

Even if Plaintiff otherwise had RA claims, he fails to allege or show that ICE's actions have been less than reasonable for several reasons. First, Plaintiff fails to cite any authority that remotely suggests that detainees subject to lawful detention under immigration statutes are entitled

to release under the RA so that they can participate in their removal proceedings. Second, the argument that release is a required "reasonable accommodation" under the RA so that Plaintiff can participate in his removal proceedings is absurd on its face because Plaintiff has been ordered removed and is detained pending his removal and, as the Supreme Court has recognized, Congress enacted detention statutes precisely because it was concerned about aliens absconding before their removal could be effectuated. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ("Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."); *Demore*, 538 U.S. at 513 ("We hold that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [such] persons . . . be detained . . . for their removal proceedings.").

Moreover, as described, ICE has taken numerous steps to protect detainees at the PIDC and to meet Plaintiff's specific medical needs. While Plaintiff may argue nothing short of release is adequate, the RA requires "reasonable" accommodations, not his preferred accommodation.

### d. This Court should not take over PIDC's proactive management of COVID-19 prevention measures.

For three reasons, this Court should not enjoin ICE and force PIDC to implement particular measures in response to COVID-19. First, as a matter of judicial comity and to prevent the risk of inconsistent rulings, this Court should not order changes to detention conditions while the Central District of California is already in the process of doing so. *See Fraihat*, 2020 WL 1932570, at *16, 29 (certifying a nationwide class of all vulnerable ICE detainees bringing Fifth Amendment and Rehabilitation Act claims and ordering preliminary relief). That court has enjoined ICE nationwide, and a different ruling here risks conflicting instructions for PIDC.

Second, at this stage, any detention condition changes ordered by the Court would be *sua sponte*. Plaintiff does not seek any specific improved conditions: his memorandum in support of his motion for a TRO clarifies that he "does not seek judicial intervention to alleviate the harsh and unsafe conditions at PI[D]C." [Dkt. 5-1 at 28.] Although Plaintiff's complaint more broadly asks the Court to order Defendants to provide him "with protection from the risk of contracting COVID-19 by ameliorating all conditions that are undermining [Plaintiff's] health" [Pet. at Prayer], he does not articulate what this order might look like.

Third, assuming Plaintiff would ask this Court to order detailed preventative measures, the Fifth Circuit recently ruled that doing so is improper. Just last week, the Fifth Circuit stayed an injunction against TDCJ that "regulates in minute detail the cleaning intervals for common areas, the types of bleach-based disinfectants the prison must use, the alcohol content of hand sanitizer that inmates must receive, mask requirements for inmates, and inmates' access to tissues (among many other things)." *Valentine*, 2020 WL 1934431, at *1. Finding that TDCJ was likely to succeed on the merits of its appeal, the Fifth Circuit noted, "Although the district court might do things differently, mere 'disagreement' with TDCJ's medical decisions does not establish deliberate indifference." *Id.* at *4. The court further noted that the harm to TDCJ was "particularly acute" because the order "interferes with the rapidly changing and flexible system-wide approach that TDCJ has used to respond to the pandemic so far." *Id.* at *5. The same would be true here where ICE's response is continually evolving to combat COVID-19. *See also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015) ("We have also explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate."); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-

to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

## II. Plaintiff fails to satisfy the other TRO factors necessary to demonstrate a "clear entitlement" to relief.

At this time, there are no suspected cases and no confirmed cases of COVID-19 at PIDC, and thus Plaintiff has not shown an irreparable injury. *See e.g., Dawson v. Asher*, 2020 WL 1304557, at *3 (W.D. Wash. Mar. 19, 2020) ("Plaintiffs do not show that 'irreparable injury is likely in the absence of an injunction.' [] The 'possibility' of harm is insufficient to warrant the extraordinary relief of a TRO.").

And while concern for potential exposure to COVID-19 is shared by all, mandating release of ICE detainees such as Plaintiff is against the public interest. It is well established that preventing removable aliens from absconding and ensuring that they appear for their removal is a legitimate governmental objective. *See Jennings*, 138 S. Ct. at 836; *Demore*, 538 U.S. at 523; *Zadvydas*, 533 U.S. at 690-91. Moreover, a neutral immigration judge and the BIA have determined that Plaintiff should be removed. Thus, given his removal order, he presents a greater risk of flight than he did while he was in removal proceedings. Additionally, recent documented instances in which Plaintiff was considered a flight risk from legal proceedings in Uganda further caution against his release here. In July 2014 when Plaintiff was charged with fraud in Uganda, the presiding magistrate declined to grant bail out of concern that Plaintiff's "shifting" residences indicated he lacked a fixed address and was "likely to escape." [Ex. 17.] And in June 2016, a Ugandan chief magistrate, concerned that Plaintiff "intend[ed] to flee" from his pending charges, issued a notice to the U.S.

Embassy warning that Plaintiff had "been granted bail" several times and "has jumped bail each time and has since disappeared." [Ex. 18.]

Finally, Plaintiff conclusorily asserts that issuance of an "injunction [ordering his release] would protect public health and safety." [Dkt. 5-1 at 25.] But as other courts have rightly recognized, this is essentially an argument for releasing *all* detainees. *See Sacal-Micha*, 2020 WL 1518861, at *5 ("[A]ccepting Sacal's reasoning would logically require the release of all individuals currently detained who are elderly or suffer from certain underlying medical conditions. The law does not require such a generalized result."); *United States v. Kerr*, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) (recognizing that "[a]ny detainee would be exposed to the same risk that [defendant-inmate] presents, and, as other courts have also concluded, the court cannot [] release every detainee who may be at risk of contracting COVID-19, as it would then be required to release all detainees"); *United States v. Munguia*, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) ("An assertion that 'there is a public good in the release of as many prisoners as possible to avoid spread of the pandemic,' . . . would be an argument for releasing all detainees.").

The public interest is also best served by allowing the orderly medical processes and protocols implemented by government professionals to remain in place for Plaintiff, particularly given that it is unclear how his medical needs would be met if released. *See Youngberg v. Romeo*, 457 U.S. 307, 322–23 (1982); *see also Verma v. Doll*, 2020 WL 1814149, at *6 (M.D. Pa. Apr. 9, 2020) ("We also note that Verma's legal detention isolates him from society at large and allows him to receive appropriate medical care free of charge."); *United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020), aff'd (D. Md. Apr. 10, 2020) (denying pretrial detainee's motion for release because he is receiving medical care in jail, has no plan for medical care if released, and there is no evidence care he may receive in the community is better). Here, PIDC has

taken extensive proactive steps to try to prevent the introduction of COVID-19 into the facility, and to meet Plaintiff's medical needs.

## Conclusion

Defendants respectfully request that the Court deny Plaintiff's motion for a temporary restraining order.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By:     *s/ Christopher D. Pineda*
Christopher D. Pineda
Assistant United States Attorney
Southern District No. 1055715
Texas Bar No. 24070420
600 E. Harrison, Suite 201
Brownsville, Texas 78520
Tel: (956) 548-2554
Fax: (956) 548-2775
Email: Christopher.Pineda@usdoj.gov

Annalisa L. Cravens
Assistant United States Attorney
Southern District No. 2791281
Texas Bar No. 24092298
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel.: (713) 567-9489
Fax: (713) 718-3303
Email: Annalisa.Cravens@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent on April 29, 2020, to all counsel of record via the court-enabled electronic filing system.

*s/ Christopher D. Pineda*
CHRISTOPHER D. PINEDA
Assistant United States Attorney